Edwin S. Tirrell, administrator, *vs.* Ira W. Appleton.

Nantucket.   January 19, 1931. — January 29, 1931. .

Present: Rugg, C.J., Crosby, Pierce, Wait, & Sanderson, JJ.

*Trust*, Constructive.

A widowed mother of advanced years conveyed a farm of about fifty acres to one of her sons upon an oral understanding with him that he should account to her for the proceeds of a future sale by him of the farm, and should pay to her some part of the proceeds, and not intending, and he not understanding, that the conveyance should be an absolute gift to him. There was no definite agreement as to what portion of the proceeds should be given to the mother. He sold the farm. She did not ask for an accounting nor for money, and he did not account to her for the proceeds of the sale. He stated that the sale price was no one's business but his own. He thereafter spent more than one-half of the proceeds for his own purposes. After the death of the mother, the administrator of her estate by bill in equity sought an accounting as to such proceeds. *Held*, that

(1) It was apparent that the intention of the defendant from the beginning was to assert an absolute ownership in the property, notwithstanding the fact that the conveyance was not intended by the mother nor understood by the defendant to be a gift;

(2) The circumstances as a matter of law gave rise to a constructive trust and imposed upon the defendant the duty to account to the plaintiff for the proceeds of the sale.

Bill in equity, filed in the Superior Court on February 7, 1930, and described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. By order of *Whiting*, J., there were entered an interlocutory decree confirming the report and a final decree among other things adjudging the defendant indebted to the plaintiff in the sum of $19,291.65. The defendant appealed.

The case was submitted on briefs.

*S. Rosenberg & R. T. Fitz Randolph*, for the defendant.

*D. J. Maloney*, for the plaintiff.

Sanderson, J. This suit was brought by the administrator of the estate of Mary J. Appleton who died intestate, survived by two sons, one of whom is the defendant.

The plaintiff seeks an accounting for the proceeds of the sale of real estate conveyed by the intestate to the defendant in June, 1928, and sold by him for a stated sum, of which he had remaining $18,478.58, after being given credit for several items apparently not in dispute. The bill alleges that the defendant procured the deed to the real estate from his mother representing to her that he would sell the property and turn over to her the proceeds of the sale. Before June, 1928, the intestate, a widow, owned a house on Pine Street, in Nantucket, and also the farm consisting of about fifty acres with farm buildings thereon, concerning which this controversy arises. For several years this farm had been occupied by the defendant. The master found that when Mrs. Appleton died in March, 1929, she was seventy-nine years of age and had been infirm and unable to leave her house for the last year or two of her life.

The defendant's brother Carll testified that at the defendant's request he asked their mother if she would let the defendant sell her farm, and she said she would if the defendant would do the right thing and give her some of the money. Other witnesses, found by the master to be entitled to belief, testified that she said her reason for agreeing to the sale of the farm was her need of money. The master found that the defendant knew of a prospective buyer of the farm some months before the conveyance to him and that this knowledge caused him to obtain the deed from his mother. The sale of the farm was made by the defendant in August, 1928, and he never gave his mother any of the proceeds of the sale and never accounted to her for them in any way. When asked at the hearing before the master why he had not told his mother how much the farm was sold for he gave as his principal reason that it was no one's business but his own. A substantial part of the net proceeds of the farm was deposited by the defendant in banks. He and his wife testified in substance that in less than one year and one half from the time of the receipt of the money more than one half of it was spent by them for living expenses, medical expenses,

travelling and for labor and materials in a painting business conducted by the defendant. They testified that their failure to produce checks or bank statements relating to the disposition of this money was due to the fact that they had been lost or destroyed.

The master, after referring to the testimony of several witnesses, summarized his conclusions in the following language: "From the testimony above stated and from inferences drawn from the circumstances disclosed by all the evidence, only a part of which has been stated in detail, I find as follows: Mrs. Appleton had an original intention that the defendant eventually should have the farm and that Carll should have the Pine Street house and this was known to the sons. She considered that this would be a reasonably equal division of her estate. She believed that the farm was somewhat more valuable than the Pine Street house, but the defendant had spent some time and money on the farm, which would equalize roughly the division. The amount which the defendant spent on the farm cannot be determined. He testified that it was $5,500 but it was in fact much less, and he had the benefit of the farm, whatever that may have been, for many years. Mrs. Appleton's intention, in the language of the law of contracts, was an entire intention: in other words, she did not mean that the defendant should have the whole benefit of the farm and the Miacomet land and also share equally with Carll in the Pine Street house. She never executed this intention. She and the defendant did not intend to make a contract and their talks in 1908 and later are disregarded except so far as they throw light on the intentions of the defendant and his mother in 1928. There was no express agreement by the defendant to pay over to his mother or to account to her for the price of the farm. She said that she believed the defendant would do the right thing and give her 'her share' of the farm proceeds, but there is no evidence as to what she meant by 'her share.' The defendant knew that she expected him to pay her some part of the proceeds and he accepted the deed from her with this understanding. His admitted

failure to tell her what the farm brought is evidence that he did not act fairly and openly with his mother after getting the deed from her. Her failure to ask him about the sale and for some of the money, and her asking Carll not to interfere, was because she was an old, feeble woman and shrank from a probable encounter with the defendant's wife, whose strong will has had considerable effect upon the whole transaction. I find that the conveyance by Mrs. Appleton to the defendant was based upon the understanding of both that he should account to her for the proceeds of a future sale by him of the farm, and should pay to her some part of the proceeds. The defendant failed wholly to perform what she and he both understood he was to do in the premises. I find as a fact that the conveyance to him was not intended by his mother, or understood by him to be an absolute gift of the farm." The master also stated the account between the parties in case the court should determine that the defendant was under an obligation to account to the plaintiff for the proceeds of the farm. By the final decree an indebtedness of the defendant to the plaintiff was established based upon the account stated by the master, with interest and costs, and trustee executions in common form were ordered to issue against two banks which had been charged as trustees. From this decree the defendant appealed.

It is apparent from the defendant's own testimony that his intention from the beginning was to assert an absolute ownership in the property, notwithstanding the fact as found by the master that the conveyance was not intended by the grantor or understood by the defendant to be a gift. Upon the findings, the deed was delivered to enable the defendant to make sale of the property for his mother with the obligation on his part to account to her for the proceeds of the sale. This obligation he repudiated by asserting title in himself. To prevent the perpetration of such a fraud by the defendant upon his mother and her estate the law creates a constructive trust and imposes upon the defendant the duty to account to the plaintiff

for the proceeds of the sale. *Frankel* v. *Frankel*, 173 Mass. 214, 216. *Powell* v. *Powell*, 260 Mass. 505, 508. *Cram* v. *Cram*, 262 Mass. 509. Upon the facts disclosed by the findings it would be inequitable for the defendant to be permitted to retain, as against the plaintiff, any part of those proceeds.

*Decree affirmed with costs.*