ROBERT C. CANN *vs.* RICHARD H. BARRY & another.

Suffolk. November 15, 1935. — January 29, 1936.

Present: RUGG, C.J., PIERCE, DONAHUE, & QUA, JJ.

*Fiduciary. Trust,* Constructive. *Frauds, Statute of. Equity Jurisdiction,* Suit to enforce trust. *Equity Pleading and Practice,* Decree.

Notwithstanding G. L. (Ter. Ed.) c. 203, § 1, one who acquired a lease of land with intent to keep it for himself but who had fraudulently led another, toward whom he had a fiduciary duty, to believe that he would acquire the lease for the latter, to whom it was of value, and thus had induced him not to take steps to acquire it himself, held the lease upon a constructive trust for him.

In a suit in equity to compel an assignment to the plaintiff of property bought by the defendant upon a trust for the plaintiff, the decree should provide for the plaintiff's reimbursing the defendant for the purchase price as a condition of the defendant's being ordered to make the assignment.

BILL IN EQUITY, filed in the Superior Court on April 30, 1935.

The decrees described in the opinion were entered by order of *Morton,* J.

*W. P. Murray,* for the defendants.

*D. H. Fulton,* (*P. Sherman* with him,) for the plaintiff.

QUA, J. This is a bill in equity to compel the defendant Barry to transfer and assign to the plaintiff the lease and personal property of the restaurant known as "Cann's Cabin" at Point of Pines in Revere and to restrain him from interfering with the good will of the business.

The facts are established by a master's report. For ten years prior to December, 1933, the plaintiff had owned and operated a successful restaurant on the premises. The name Cann had become associated in the public mind with sea food of high quality. In December, 1933, Barry began to sell liquor at the restaurant under an arrangement with Cann by which Cann was to have thirty per cent of the gross profits from the liquor. The parties held the licenses jointly. In July, 1934, the land under the building having been taken by the Commonwealth, Cann and the landowner entered into a written agreement under which a new restaurant was to be built on adjoining land and Cann was to have a ten-year lease upon it. Cann designed the new building, Barry assisting in the designing of the new tap room. On October 25 Cann made a general assignment for the benefit of his creditors. On October 30 he was severely injured in an accident, as a result of which he stayed in a hospital until December 24 and thereafter was confined to his house until February 7, 1935. He was adjudicated bankrupt on November 30, 1934. Barry visited Cann at the hospital six or eight times, expressed his sympathy, told Cann not to worry "and assured him that he would look after things at the restaurant." They conferred as to the construction then going on. "All these conversations . . . were on the expressed understanding that they were to go on in business together as theretofore." Cann said he thought the assets could be bought from the receiver in bankruptcy for a small amount. Barry said he would buy them as cheaply as he could and advance the money and Cann could reimburse him "when things got straightened out." At several similar talks Barry said he was making the arrangements to buy. In a conversation at the hospital December 16 lasting three or four hours

Barry said, "I will buy in the assets for you and we will go on as before and when things improve you can pay me back." Cann assented and thanked Barry. On a suggestion being made by a person present that "they had better put it in writing," Barry replied "that they trusted each other and had begun business with a hand shake and were content to go on in the same way, and Cann said he was satisfied."

On December 29, 1934, Barry completed the purchase from the receiver of the assets of the bankrupt at Point of Pines, including the good will and the right to obtain the new lease. Barry paid therefor the sum of $400. On January 2, 1935, Barry obtained from the landowner a new lease of the new building for the same term and on the same conditions as had been provided in the agreement between the landowner and Cann. After the interview of December 16 at the hospital Barry avoided Cann's attempts to communicate with him. On January 11, 1935, he told Mrs. Cann that he had bought the place, that it was his, and that he "was through being Santa Claus." When the building was completed, Barry advertised the "Reopening of Cann's Cabin" and has since then operated the restaurant under that name, employing "in key positions" former employees of Cann.

The master continues: "I find as a fact as early as the latter part of November Barry had formed the design of taking Cann's business away from him and that all his dealings with Cann thereafter were directed to that end. Barry's assurances that he would look after everything and that Cann need not worry were for the purpose of lulling Cann into a sense of security and to prevent his taking other steps for his protection. . . . The promise to buy the assets for Cann had a double aspect. It was made with a fraudulent intention that it would not be kept for the purpose of preventing other effective measures by Cann. It was also made so that if Cann should succeed in saving his property in spite of Barry's schemes then Barry would have the advantage of his contract with Cann to

have the liquor business." The master further finds, "in so far as it is matter of fact," that Cann is the beneficial owner of the lease, business and good will.

The judge confirmed the master's report and entered an interlocutory decree ordering the defendant Barry to assign his present lease to the plaintiff and to release and deliver to the plaintiff the personal property and enjoining the defendant Barry from using the name "Cann's Cabin" and from interfering with the good will of the business. The judge has reported for our determination the question of the correctness of this decree.

G. L. (Ter. Ed.) c. 203, § 1, provides that "No trust concerning land, except such as may arise or result by implication of law, shall be created or declared unless by a written instrument signed by the party creating or declaring the trust or by his attorney." It is settled in this Commonwealth that no implied or constructive trust arises merely because the defendant has agreed orally to buy land as the plaintiff's agent and then has repudiated the obligation and kept the land for himself. Any trust in such a case must arise solely from the oral agreement and is unenforceable because of the statute. *Bourke* v. *Callanan*, 160 Mass. 195. *Tourtillotte* v. *Tourtillotte*, 205 Mass. 547. *Kennerson* v. *Nash*, 208 Mass. 393. *Southwick* v. *Spevak*, 252 Mass. 354. *McDonald* v. *Conway*, 254 Mass. 429. But it is also true that whenever, apart from the oral promise and not merely because that promise has been made and broken, such a relation of trust and confidence exists between the parties that to permit the purchaser to retain the purchase for himself would practically amount to a fraud upon one toward whom he has assumed a fiduciary relationship, the law imposes a constructive trust which is not touched by the statute. *Rolikatis* v. *Lovett*, 213 Mass. 545. *Hazleton* v. *Lewis*, 267 Mass. 533.

The circumstances which may create a fiduciary relationship are so varied and so difficult to foresee that it is unwise for courts to attempt to make comprehensive definitions. The statement of Lord Chelmsford in *Tate* v. *Williamson*, L. R. 2 Ch. 55, 61, has been often quoted: "Wherever two

persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed." *Reed* v. *A. E. Little Co.* 256 Mass. 442, 448. Generally, however, each case must be decided upon its own peculiar facts. In this case the property in question had a special value to the plaintiff. Barry learned of this and of the opportunity through intimate and friendly relations with the plaintiff, which he affected to continue. They were engaged together in attending to the construction of the new building for their common use. Cann first suggested the purchase. He was helpless in bed. Barry deceitfully purported to act in his behalf, although secretly in fact acting for himself, until Cann had lost all opportunity to take other steps for his own protection. We think that a trust in both the lease and the personal property arose, not out of the broken promise, but by implication of law, under the principle illustrated by such cases as *Essex Trust Co.* v. *Enwright*, 214 Mass. 507, *H. C. Girard Co.* v. *Lamoureux*, 227 Mass. 277, and *Horn Pond Ice Co.* v. *Pearson*, 267 Mass. 256. See also *Hazleton* v. *Lewis*, 267 Mass. 533, and *Tirrell* v. *Appleton*, 274 Mass. 393.

The master's report was properly confirmed. There is nothing requiring discussion in the defendant Barry's exceptions thereto.

The question of the right of the plaintiff to an assignment as against the lessor is not before us and is not decided. *Horn Pond Ice Co.* v. *Pearson*, 267 Mass. 256, 261.

The decree should not have required Barry to turn over the property to Cann without being repaid the purchase price of $400. Cann ought not to be put in a better position than he expected to be in at the time of his reliance upon Barry. He offers to repay in his bill. Repayment should be a condition of the decree. *H. C. Girard Co.* v. *Lamoureux*,

227 Mass. 277, 280. It is possible that Cann may desire, for the purpose of making this payment, to avail himself of any balance which may be found due him on an accounting by the receiver appointed in this cause or between the parties in later stages of the case. These matters are not now before us and we do not intend to intimate any opinion about them in any aspect. But we think the Superior Court should be free in its discretion either to enter a decree in the present form, except for the modification mentioned above, or to postpone the entry of a decree, or the time for its performance, to a later date. For this reason the decree is reversed, any further orders or decrees to be consistent with this opinion.

*Ordered accordingly.*