NATHAN YAMINS *vs.* HARRY ZEITZ & another.[1]

Suffolk. November 3, 1947. — January 8, 1948.

Present: QUA, C.J., DOLAN, WILKINS, & SPALDING, JJ.

*Trust*, Constructive trust. *Fiduciary*.

Allegations in a bill in equity, that the plaintiff procured an assignment of a lease of a theatre from the defendant, the lessee, paying him a substantial consideration therefor, for the purpose of protecting investments in other theatres operated by the plaintiff, and informed the defendant of such purpose; and that it "was the understanding of the parties" that the plaintiff in so doing expected to "acquire a position advantageous to negotiating and obtaining extensions and renewals" of the lease and that "as a matter of good faith" the defendant "would do nothing to impair or prejudice the same," did not show that there was any fiduciary relationship between the parties or that the defendant became a constructive trustee for the plaintiff of a new lease of the theatre which the defendant, upon the expiration of the assigned lease, obtained for himself for the purpose of operating the theatre in competition with those operated by the plaintiff.

---

[1] The codefendant is Zeitz Theatres of Fall River, Inc.

BILL IN EQUITY, filed in the Superior Court on December 23, 1946.

A demurrer to the bill was heard by *Williams*, J.

*G. R. Farnum*, (*C. G. Anastos* with him,) for the plaintiff.

*R. E. Titus*, (*R. L. Genensky* with him,) for the defendants.

DOLAN, J. This is a bill in equity in which the plaintiff prays that the defendants be adjudged to be constructive trustees for the benefit of the plaintiff of a certain leasehold, and ordered "to assign, transfer and set over the same to the plaintiff." Other prayers seeking injunctions and an accounting need not be recited in detail. The case comes before us on the plaintiff's appeal from the interlocutory decree entered by the judge sustaining the defendants' demurrer and from the final decree dismissing the bill.

The material allegations of the bill are these: The plaintiff has been actively interested for many years in the operation of moving picture theatres in Fall River. "At the present time" he controls and manages several theatres in that city, each of which is owned by a corporation organized under the laws of the Commonwealth. "All of their capital shares are owned and controlled by the plaintiff and various members of his family." These theatres constitute all the moving picture theatres in Fall River, except two "small, inconsequential" ones and the Academy Theatre. The defendant Zeitz controls and manages moving picture theatres in New Bedford and in Newport, Rhode Island, and Portland, Maine. In August, 1946, Zeitz organized the defendant Zeitz Theatres of Fall River, Inc. It operates a moving picture theatre in Fall River known as the Academy Theatre, which is in active competition with those in Fall River controlled and managed by the plaintiff. From 1922 until 1940, except for short periods, the plaintiff held leases of the Academy Theatre but seldom operated it. The purpose of acquiring the leases was to protect the investments made by the plaintiff and various members of his family in the other theatres in Fall River which the plaintiff was managing. The operation of the Academy Theatre by a competitor would impair those other investments. "On or about September 1, 1940, the last of the series of leases

under which the plaintiff had been in possession of the Academy Theatre for approximately twenty years, with the exception of brief intervals, expired without the plaintiff's making any effort to extend or renew the same. The plaintiff's reason therefor was the fact that the Center Theatre was then being constructed by independent interests with the intention of competing with the Durfee, Empire, Capital, Park and Flint theatres [those operated by the plaintiff] and consequently the reason which impelled the plaintiff to lease the Academy Theatre no longer existed. . . . On August 19, 1940, the defendant Zeitz obtained a lease of said Academy Theatre for a term of six years beginning September 1, 1940. . . . Shortly after said defendant Zeitz had obtained said lease of the Academy Theatre, the plaintiff acquired control of . . . [the] Center Theatre, whereby it again became necessary to lease the Academy Theatre, for the reasons which had impelled him originally to lease said property, all as set forth above." On September 3, 1940, the "parties" entered into a contract in writing whereby Zeitz agreed to assign the lease in question to the plaintiff, and on September 6, 1940, Zeitz assigned the lease to the plaintiff for the residue of its term. As part consideration for the assignment the plaintiff gave Zeitz his promissory note for $6,375 which was later satisfied in full. At the time of these negotiations for the assignment of the lease the plaintiff informed Zeitz that his purpose in acquiring it was to protect the investments in the other moving picture theatres before referred to, and it "was the understanding of the parties that the plaintiff in assuming these obligations and paying this money expected that in addition to the assignment of the lease he would acquire a position advantageous to negotiating and obtaining extensions and renewals thereof for as long a period as he deemed the protection of his situation as set forth required, and it was understood that as a matter of good faith the defendant Zeitz would do nothing to impair or prejudice the same." The term of the lease thus assigned expired on September 1, 1946. Prior thereto Zeitz without any notice secretly negotiated with the owner of the Academy Theatre for a

new lease, either in his own name or in that of the defendant corporation, obtained a lease to begin on the expiration of the term of the existing lease which he had assigned to the plaintiff, and is now operating that theatre through the instrumentality of the defendant corporation, notwithstanding prior notice from the plaintiff that, unless said lease was turned over to him and the defendant Zeitz desisted from his purpose to open and operate that theatre, the plaintiff intended to bring a bill in equity to have a constructive trust of said lease established for his benefit and for an accounting of profits or damages. It is further alleged in the bill that the action of the defendants as set forth also was unfair, inequitable, unconscionable and a fraud upon the rights of the plaintiff.

The defendants jointly and severally demurred to the bill, setting up among other grounds that the bill sets forth no ground for equitable relief; that the facts set forth in the bill do not in law create a "resulting, implied or constructive" trust in favor of the plaintiff; that the bill fails to allege any writing signed by the defendants or either of them or by an attorney in their behalf creating or declaring a trust as required by G. L. (Ter. Ed.) c. 203, § 1; that the facts do not aver any confidential relationship between the plaintiff and the defendants, or either of them, sufficient as matter of law to create a trust in favor of the plaintiff; that there is no averment in the bill of any writing sufficient to satisfy the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1; that no consideration is disclosed to support the "understanding of the parties" alleged in the bill; and that necessary parties are not named as parties in the bill. It is unnecessary to recite further grounds of the demurrer, the sole contention of the plaintiff being that the allegations of the bill are sufficient to present a case of a constructive trust of the leasehold in question for the benefit of the plaintiff. We do not sustain this contention, being of opinion that the bill does not state a case for equitable relief and that the demurrer was sustained rightly.

Manifestly the allegations of the bill do not establish an express trust, there being no allegation of any written

instrument signed by the defendants or either of them or by their attorney creating a trust for the benefit of the plaintiff as required by G. L. (Ter. Ed.) c. 203, § 1. And it may be added that no agreement or valid contract is alleged in the bill, but only an oral understanding. See *Southwick* v. *Spevak,* 252 Mass. 354, 357. If the bill is to stand against the demurrer, a trust must be found by implication of law. Equity will, of course, impose a trust without regard to the intention of the parties if, in order to avoid unjust enrichment, the person who holds the property should be charged with a duty to convey it to another. *Cann* v. *Barry,* 293 Mass. 313. Scott, Trusts, § 440.1. But this equitable relief is granted only where there has been either fraud in securing the property or violation of a fiduciary relation whether express or arising out of a confidential relationship. Such a relationship can arise where special trust or confidence is placed in one party by another. Examples of cases where it has been held that a constructive trust did arise out of a confidential relationship, such as that between business partners, attorney and client, a corporation and directors, an employer and an employee are *Cann* v. *Barry,* 293 Mass. 313, *Rolikatis* v. *Lovett,* 213 Mass. 545, *Allen* v. *Moushegian,* 320 Mass. 746, *H. C. Girard Co.* v. *Lamoureux,* 227 Mass. 277, *Reed* v. *A. E. Little Co.* 256 Mass. 442. In the present case, however, the facts alleged are clearly insufficient to establish any fiduciary or confidential relationship between the plaintiff and the defendants arising out of the acquisition of the leasehold in question by the defendants or otherwise. Counsel for the plaintiff properly concedes that the mere relation of the assignor and the assignee of a lease does not, without more, give rise to a confidential relationship. See *Flat-Marks Realty Corp.* v. *Silver's Lunch Stores, Inc.* 74 Fed. (2d) 210, 211, certiorari denied 294 U. S. 731; *Robinson* v. *Eagle-Pitcher Lead Co.* 132 Kans. 860, 862–869. We find nothing in the bill to show more. The allegations of the bill disclose that the defendants were competitors of the plaintiff and that that was why the plaintiff sought the assignment of the lease in question. It is not alleged that any confidential information was given to the

defendants by the plaintiff. If the plaintiff did place confidence and trust in Zeitz, there is no allegation that Zeitz was aware thereof. A person cannot create obligations on the part of another by merely trusting the other. And in a business relationship even the existence of mutual respect and confidence does not make the relationship fiduciary. *Comstock* v. *Livingston*, 210 Mass. 581, 584. This is not affected by the allegation in the present bill of the "understanding" between the plaintiff and the defendants or either of them. Even though the plaintiff had engaged Zeitz to secure the new lease for him and Zeitz had secured it for himself, a constructive trust for the plaintiff would not arise. Any trust in such a case must arise solely from the oral agreement and is unenforceable because of the statute, G. L. (Ter. Ed.) c. 203, § 1. *Cann* v. *Barry*, 293 Mass. 313, 316. *Salter* v. *Beal*, 321 Mass. 105, 107–108. *Chase* v. *Aetna Rubber Co.* 321 Mass. 721, 724. A mere understanding, such as that alleged in the bill before us, that the defendant assignor would permit the plaintiff assignee to obtain a renewal of the lease, in like manner would not give rise to any implied or constructive trust.

Counsel for the plaintiff has argued that there is a "tenant right of renewal" which is entitled to protection. That expectancy of a tenant, however, is protected only as against those who stand in a fiduciary or confidential relationship to the tenant, and against those who validly contract to respect the right of renewal. *Flat-Marks Realty Corp.* v. *Silver's Lunch Stores, Inc.* 74 Fed. (2d) 210, 211, certiorari denied 294 U. S. 731. *Robinson* v. *Eagle-Pitcher Lead Co.* 132 Kans. 860, 862–869.

It follows from what we have said that the interlocutory decree sustaining the demurrer must be affirmed, and that the final decree dismissing the bill must be affirmed with costs of the appeal. It is

*So ordered.*