JACK WARSOFSKY *vs.* HERBERT S. SHERMAN & another.

Norfolk.    January 4, 1950. — July 26, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Fiduciary.    Trust,* Constructive trust.    *Coöperative Bank.*

A defendant who was a director and member of the security committee of a coöperative bank stood in a fiduciary relation to the plaintiff respecting certain real estate where it appeared that the defendant did not know that the property was for sale until the plaintiff, wishing to obtain a loan from the bank to finance a purchase of the property but not having made a written application therefor, gave the defendant information as to the property in confidence and solely in his official capacity and for the purpose of enabling him and the other members of the security committee to pass on the loan, and that the defendant understood that he was receiving the information on that basis; and the defendant, upon buying the property himself immediately after receiving the information, held it on a constructive trust for the plaintiff.

BILL IN EQUITY, filed in the Superior Court on January 6, 1947.

The suit was heard by *Forte,* J.

*P. L. Keenan,* (*J. J. Gavin* with him,) for the plaintiff.

*A. T. Handverger,* for the defendants.

RONAN, J.    This is an appeal from a final decree dismissing a bill in equity brought to impose a constructive trust upon four parcels of land in Millis, title to which had been conveyed to a Milford bank and which the plaintiff, it was alleged, learned he could buy back for $10,000, and which, it was alleged, the male defendant, through breach of a fiduciary relation, had wrongfully acquired and retained in the name of his wife, the other defendant.

The judge made findings of fact and we have a transcript of the evidence.  Having examined the evidence and adopted such findings of the judge as are not shown to be plainly

wrong, we summarize the facts, including those which we find for ourselves. The plaintiff's father held in his own name or in that of his wife four parcels of real estate in Millis upon which a Milford bank held mortgages. The father was aged, infirm, and blind and was unable to comply any longer with the terms of the mortgages. As a result of a conference between the officials of the bank and the plaintiff's father and his family, all these premises were conveyed to the bank on March 12, 1940, and releases were given to the bank. At the time these conveyances were made there was a discussion to the effect that, if the plaintiff's father or the plaintiff subsequently became able to carry the property, the bank would reconvey the property. The plaintiff thereafter, acting as the nominee of his father, conferred from time to time with an official of the bank with reference to acquiring the property. Sometime in November, 1940, it became apparent that the plaintiff would be drafted into the army and he increased his efforts to secure the property before he entered the service. On or about November 1, 1940, he was told the terms and conditions upon which he could purchase the property from the Milford bank. From all the evidence, the inference is plain that he was justified in understanding, as he did, that the bank was willing to convey these parcels for $10,000. The plaintiff, in an endeavor to secure financial aid to enable him to purchase the property, orally applied on or about the middle of November, 1940, for a loan from a coöperative bank. He was referred by the treasurer of this bank to one Smith, a director and member of the security committee, with whom he discussed his request for a loan. Acting on Smith's advice, he conferred on the same day with one Herbert E. Sherman, described in the bill as Herbert S. Sherman and hereinafter called the defendant. He told the defendant that he desired to discuss a matter in strict confidence with him as a director and member of the security committee of the coöperative bank, that Smith had sent him to the defendant, and that he wanted to secure a loan of $10,000 from the bank. He then told the defendant where

the property was, gave him the details as to income and expenditures, and stated that he wanted to get the property back. The defendant replied that the proposition seemed to be a good one. The defendant understood that the information was given to him in confidence as a director and member of the security committee of the coöperative bank, and he received the information in that capacity and solely for the purpose of enabling himself and other officials of the bank to determine whether the security warranted the granting of the loan. It is apparent that the judge did not believe the testimony of the defendant and his witnesses that the defendant knew that the property was for sale and that he had negotiated for its purchase long prior to the time the plaintiff testified he had consulted him. In this there was no error of law. We find that he did not know the property was for sale until so informed by the plaintiff, and that within about two days thereafter he offered to buy and the Milford bank voted to sell it to him for $10,000. The defendant acquired title in the name of his wife on December 9, 1940. The property was worth more than the purchase price.

The sole ground upon which relief was denied in the Superior Court was that, although in the main adopting the plaintiff's version of the transaction, the trial judge ruled that there was not sufficient basis to establish a fiduciary relationship. He apparently thought that the case was governed by Salter v. Beal, 321 Mass. 105.

Doubtless, there are many familiar and well recognized forms of fiduciary relationships such as attorney and client, trustee and beneficiary, physician and patient, business partners, promoters or directors and a corporation, and employer and employee. See Hawkes v. Lackey, 207 Mass. 424, 433; Yamins v. Zeitz, 322 Mass. 268, 272. The relationship is not confined, however, to these and similar situations, for the circumstances which may create a fiduciary relationship are so varied that it would be unwise to attempt the formulation of any comprehensive definition that could be uniformly applied in every case. See Scott on Trusts, § 462;

Pomeroy, Eq. Jur. (5th ed.) § 956a. There is jurisdiction in equity to prevent, by means of the remedial device of a constructive trust, unjust enrichment arising out of a breach of a fiduciary relation. The existence of the relationship in any particular case is to be determined by the facts established. It was said by Lord Chelmsford in *Tate* v. *Williamson*, L. R. 2 Ch. 55, 61, "Wherever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed." That statement has been frequently cited with approval by this court. *Hawkes* v. *Lackey*, 207 Mass. 424, 432. *Cann* v. *Barry*, 293 Mass. 313, 316–317.

The plaintiff was not seeking any loan from the defendant but desired a loan from the coöperative bank, and was dealing with the defendant only in his capacity as an official of the bank. The plaintiff to secure a loan was required to file a written application and to furnish the bank with such information concerning the property he contemplated purchasing as was necessary and adequate to enable the security committee to pass on the loan, which could not be granted unless it was approved by at least two members of the committee. G. L. (Ter. Ed.) c. 170, § 26. See St. 1950, c. 371, § 1, inserting in the General Laws a new chapter relating to coöperative banks. The information given by the plaintiff to the defendant was furnished in confidence by the plaintiff in order to enable the defendant and other members of the committee to whom he might convey the information to determine whether the loan should be granted. It was to be used for no other purpose, and the defendant, impliedly at least, understood the terms upon which the information was given and voluntarily undertook to comply with those

terms. He stood in a fiduciary relation toward the plaintiff with reference to the matters disclosed. We are confirmed in this view by various other circumstances involved in the conference between the plaintiff and the defendant. Coöperative banks deal largely with persons of small or moderate means to aid them in accumulating savings, and an important branch of their activity is to assist those who are willing to help themselves acquire homes by a plan of monthly payments for interest on the loan and a reduction of the principal. *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252, 255. *Lowell Co-operative Bank* v. *Co-operative Central Bank,* 287 Mass. 338, 346. Those who desire to purchase a home do not ordinarily possess any considerable property, and it becomes important for a coöperative bank to have all the material details of the property intended to be offered as collateral security in order to decide whether it is of sufficient value to justify the granting of the loan. If the information furnished by the applicant for a loan is to be seized upon immediately by the bank official to whom it is given and if by virtue of the information he can purchase the property behind the back of the applicant, then public confidence in such institutions will be seriously impaired if not utterly destroyed. In any event, an applicant for a loan ought not to be subjected to such risks. A bank official to whom an application for a loan is made must act fairly and impartially toward the bank and toward the applicant. He is prohibited from deriving any personal gain at the expense of the applicant or to the detriment of the bank, and he is subject to a penalty if he requests or receives any fee, commission, or gift for or on account of a loan. G. L. (Ter. Ed.) c. 170, § 38.

Members of a security committee acquiring confidential information by virtue of their official position cannot use that information for their own personal gain as against the bank. *Essex Trust Co.* v. *Enwright,* 214 Mass. 507. *Horn Pond Ice Co.* v. *Pearson,* 267 Mass. 256. Restatement: Restitution, § 200. It is true that the defendant was not employed by the plaintiff, but it is plain that, in accepting

the information confidentially conveyed, he voluntarily undertook to use it solely for the purpose for which it was given, and that he could not properly derive any personal gain from carrying out his undertaking any more than he could if he were an employee in like circumstances.

The instant case is distinguishable from *Salter* v. *Beal*, 321 Mass. 105, and *Yamins* v. *Zeitz*, 322 Mass. 268, on one ground at least as pointed out in those decisions, as no confidential information was there conveyed to the defendants. The relation between the parties in *Colonial Operating Co.* v. *Poorvu*, 306 Mass. 104, was that of mortgagor and mortgagee, which is not a fiduciary relation except in the actual conduct of the power of sale. See *Berenson* v. *Nirenstein, ante*, 285, where a broker was held to stand in a fiduciary relation to his principal and to hold the property acquired in breach of this relation on a constructive trust for the benefit of the principal.

We do not think it material that no written application for a loan from the coöperative bank was made by the plaintiff. As we have already said, no loan could have been granted in the absence of a written application, but the absence of such an application does not absolve the defendant from the consequences of his own wrongdoing especially where, as here, the filing of a written application when the plaintiff got around to it would have been an idle gesture, for the plaintiff had then been prevented from purchasing the property from the Milford bank.

The final decree is reversed and a new decree is to be entered with costs requiring the defendants to convey the property to the plaintiff upon the payment of $10,000 increased or diminished as will be shown by an accounting of the profits and expenses to the date of the new final decree. *Lang* v. *Giraudo*, 311 Mass. 132, 140–141.

*So ordered.*