*Southern District*

*No. 29147*

## MILFORD FINANCE CORPORATION

v.

## JOSEPH W. LUCAS, ET AL

Argued: July 28, 1970. Decided Sept. 30, 1970.

*Present:* Nash, C.J., Owen, *Murphy, JJ.

Case tried to Robinson, J., in the District Court of Western Norfolk, No. 29147.

**Murphy, J.** Before proceeding with the opinion, it should be noted that there was a mistake, either typographical or otherwise, on page 14 of the report where the judge found as follows: "As I read this statute, I must conclude that the facts involved in the sale of the food freezer

by Northeast to the defendants was unconscionable as a matter of law.'' This statement is contrary to his finding that it was not ''unconscionable'' and contrary to his finding for the plaintiff. We are of the opinion that by this paragraph the judge meant that in order to find for the defendants, he would have to conclude that the facts involved in the sale of the food freezer by Northeast was unconscionable as a matter of law and that he could not do that. With that explanation, we proceed to a decision in the matter.

We also call attention to the fact that the Rule 31 of the District Courts (1965) requires that reports and all papers intended for use before Appellate Divisions be printed or typewritten upon opaque paper having a dull surface, 8½ inches in width and 11 inches in height.

This is an action of contract commenced by a writ dated June 26, 1969. The declaration in substance states that the plaintiff was assigned a retail installment sales agreement, a copy of which is annexed to the declaration, by Northeast Food Service, Inc. which had been executed by the defendants on December 7, 1967. The declaration alleges that nothing has been paid by the defendants and an unpaid balance of $758.94 with interest remains. The answer is a general denial, plea of payment and lack of consideration, a denial that the plaintiff is a holder in due course, and an allegation that the note is illegal and void as being in violation

of General Laws relating to retail installment sales and service.

The court excluded certain evidence to which the defendants claimed a report as follows:

"1. Bill of Complaint dated March 26, 1968 in the case of *Commonwealth of Massachusetts* v. *Northeast Food Service, Inc., et als,* a copy of which is annexed and marked 'A'.

2. Final Decree entered April 5, 1968 in the case of *Commonwealth of Massachusetts* v. *Northeast Food Service, Inc., et als,* a copy of which is annexed and marked 'B'.

3. The Northeast Food Service Membership Bond and Guarantee dated 12/9/67, a copy of which is annexed and marked 'C'.

4. The evidence admitted de bene and later excluded as follows:

The defendant Joseph W. Lucas testified that he and his wife had been mailed a post card informing them that they had 'won a free Miami Beach vacation for two.' Mr. Lucas called a telephone number to redeem the vacation and was visited on December 9, 1967 by Melvin Bloom, a salesman for Northeast Food Services, Inc. The defendants were then asked by Mr. Bloom if they might be interested in a frozen food plan offered by Northeast Food Services, Inc. They were asked by Mr. Bloom how much they spent each week on meat for the family. Mrs. Lucas calculated that it cost them $11.80 per week for meat. Mr Bloom stated that Northeast Food Services, Inc. would

supply them with the finest choice of meats delivered to their home for $12 per week. The defendants then asked Mr. Bloom how often the meats were delivered and Mr. Bloom said every six months. The defendants said that the freezer section of their refrigerator was not capable of holding such a large quantity of food. Mr. Bloom said if you agree to purchase frozen meat from Northeast Food Service, Inc. for three years, you will be supplied a freezer at no extra charge. Mr. Bloom then presented the defendants with a Northeast Food Service Membership Bond and Guarantee, of which the introduction into evidence was excluded by the Court and a report was claimed. Mr. Bloom then produced two documents which he requested the defendants to execute. One was entitled consumer note and was in the amount of $195.24 payable in four equal payments of $48.81. The other was the retail installment sale agreement attached to the declaration in the amount of $1,050.84 payable in 36 equal payments of $29.19. When the defendants saw the latter they said it was too much to pay for a freezer. Mr. Bloom then said the freezer payments are included in the food payments and both amounted to $12 per week. Mr. Bloom said the only reason we require you to sign the retail installment sales agreement is to insure that you purchase your meats from us for at least three years. Mr. Bloom then explained that the $12 per week payments would be payable monthly, that the first payment was due February 1, 1968 and

would be in the amount of $78 for the first four payments. These first four payments represented the first six months of the program. Four checks in the amount of $78 each were introduced into evidence. Northeast Food Services, Inc. delivered the freezer and the first supply of six months of meat. The next six-month supply of meat was made to the defendants who thereafter made monthly payments of $52. Northeast Food Services, Inc. then went out of business in October, 1968 and no further deliveries of meat were made. The last payment of $52 by the defendants was received by the plaintiff on or about October 21, 1968. The defendant refused to make any further payments and requested the plaintiffs to remove the freezer."

The defendants duly made the following requests for rulings:

"1.  The plaintiff, Milford Finance Corporation, as an assignee of a contract made by Northeast Food Service, Inc. and any defense which the defendants could raise against the assignor may also be raised against the assignee.

2.  Any promissory note which defendants have signed is not a negotiable instrument.

3.  The retail installment sales agreement, a copy of which is attached to plaintiff's declaration, is an unconscionable contract in accordance with Mass. G.L. c. 106, sec. 2-302(1).

4.  The fair market value of the upright American freezer which was allegedly pur-

chased by the defendants under the retail installment sales agreement of December 9, 1967, on said date, was $250.00.

5. The total time sale price of $1,050.84, as shown on the retail installment sales agreement attached to plaintiff's declaration is so excessively high as to make the entire contract unconscionable and unenforceable.

6. The contract entered into between Northeast Food Service, Inc. and the defendants on December 4, 1968 included the delivery of food by Northeast to the defendants in accordance with the Northeast Food Service Membership Bond and Guarantee dated 12/9/67.

7. The Northeast Food Service, Inc. breached any alleged contract entered into with the defendants on December 9, 1967.

8. The defendants may present evidence as to the commercial setting, purpose and effect of the alleged contract attached to plaintiff's declaration.''

The court disposed of these requests for rulings as follows:

"1. Allowed.

2. Irrelevant because there is no promissory note involved.

3. Denied.

4. Denied.

5. Denied. This request is denied because there was no admissible evidence introduced to substantiate a claim that the contract on which this

action is based was 'unconscionable.'

6. I rule that this request is irrelevant to the action before me.

7. I rule that this request is irrelevant to the action before me.

8. This request is allowed as a correct statement of law.''

The court found the following facts:

''The plaintiff brings this action of contract to recover the balance due under a written installment sale contract executed between the Northeast Food Service, Inc. and both defendants dated December 9, 1967 which contract was assigned in writing to the plaintiff December 13, 1967 for the sum of $806.18. . . . The contract relates to the purchase by the defendants of an upright Americana food freezer for the price of $800.00 plus Massachusetts sales tax of $24.00. The total price was to be paid off over a period of thirty six months at $29.19 per month beginning January 28, 1968. There is no question that the freezer was delivered to the defendants at their residence in Walpole. Payments of $29.19 were made on the contract to the plaintiff for ten months beginning January 30, 1968 and the last being October 21, 1968. These payments totalled $291.90 all in accordance with the contract. The next payment after October 1968 would be due according to the contract on November 28, 1968. However, in October, 1968 the defendant, Joseph W. Lucas, Jr. who testified for both defendants said that he did not con-

tinue making payments on the freezer because the Northeast Food Service, Inc. had gone out of business and he was unable to purchase frozen food according to an agreement which he had with them, all of which I find has no bearing nor part of this action. Insofar as this contract is concerned I find no evidence of fraud, deception or failure of consideration and, in fact, quite consistent with the testimony of Mr. Lucas that he fully intended in October, 1968 to continue payments of $29.19 for the balance of the time provided in the contract except that he was unable to purchase frozen food directly from Northeast Food Service, Inc. Mr. Lucas further testified that the food freezer referred to in the contract is still in his possession although he said he does not use it. As stated before, the contract became in default on November 28, 1968 and, therefore, the balance due on the original price of the freezer plus tax less the payments thereupon made is $532.10. Therefore, I find for the plaintiff for $532.10 with interest from November 28, 1968.''

The defendant seasonably claimed a report to the exclusion of certain evidence as follows:

''First: a copy of a Decree of the Suffolk Superior Court in Equity, case No. 88287, relative to a suit in Equity by the Attorney General against Northeast Food Service, Inc., et al, entered April 5, 1968.

''Second: a so-called Membership Bond and Guarantee between Northeast Food Service,

Inc. and the defendant Joseph W. Lucas dated December 9, 1967.''

The defendants claimed to be aggrieved by the finding, the exclusion of the Bill of Complaint dated March 26, 1968, the exclusion of the Final Decree entered April 5, 1968 in the case of *Commonwealth* v. *Northeast Food Services, Inc.*; the latter exclusion of evidence admitted *de bene* above; the Northeast Food Service Membership Bond and Guarantee; and the court's disposition of their requests for rulings numbered 3, 4, 5, 6, 7 and 8.

General Laws, Chapter 106, paragraph 2-302 (1)[1] provides that the test for whether a contract is unconscionable ''is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract —The principle is one of prevention of oppression and unfair surprise.''

---

[1] UNCONSCIONABLE CONTRACT OR CLAUSE. If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

[2] When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

The defendant in his brief has aptly stated that the law in this area is still in a state of development, and although it appears that no Massachusetts case has construed Section 2-302,[2] several other jurisdictions have held that excessively high prices are grounds for not enforcing a contract under this section and they cite certain cases from foreign jurisdictions applicable to this provision. Some of these cases can be distinguished from the present case. *American Home Improvement, Inc.* v. *MacIver*, 105 N.H. 435, *Frostifresh Corp.* v. *Reynoso*, 274 NYS2d 757 (1966), *Central Budget Corp.* v. *Sanchez*, 279 NYS2d 391 (1967).

In *Application of State of New York* v. *I.T.M., Inc.*, 275 NYS2d 303, that decision was clearly based upon evidence of fraud and deception, practices which were used in negotiation of the contract.

In a later case, *Jones* v. *Star Credit Corp.*, 298 NYS2d 264 (1969), the court held that selling a freezer unit having an actual retail value of $300 for $900 ($1,439.69 including credit charges and $18 sales tax) was unconscionable as a matter of law under the Uniform Commercial Code. The court further stated that fraud was not present in the case and did not have to be present under the code in order to find a contract unconscionable.

In the case at hand, there was evidence at the trial that Mr. Lucas testified without objection that in his opinion the fair market value of the

Americana freezer delivered to his home was $250. The contract, Exhibit 1 attached to the plaintiff's declaration, indicates a cash sales price of $824.00, plus finance charges of $226.84, making a total of $1,050.84. This would be approximately four times the value as testified to by the defendant at the trial. This price would be far more excessive than that set forth in *Jones* v. *Starr* supra, where the actual retail value was $300 and the price was $900. If we were to follow that ruling a finding for the defendant would be required.

We do not deem it necessary to decide at this time whether excessive price alone is sufficient to render a contract "unconscionable" as a matter of law or otherwise. The trial judge erred in excluding all of the evidence offered by the defendants which follows:

1. Bill of Complaint dated March 26, 1968 in the case of *Commonwealth of Massachusetts* v. *Northeast Food Service, Inc., et als.*

2. Final Decree entered April 5, 1968 in the case of *Commonwealth of Massachusetts* v. *Northeast Food Services, Inc., et als.*

3. The Northeast Food Service Membership Bond and Guarantee dated 12-9-67.

4. The oral evidence of the defendant Lucas, which was admitted *de bene* and later excluded and which is set out in detail on pages 2, 3 and 4 of this Opinion.

Under section 2-302 (2) of G.L. Chapter 106, the defendants must be given a reasonable op-

portunity to present evidence that said contract is unconscionable.

The defendants were not given a reasonable opportunity to present such evidence, particularly, as to the commercial setting, purpose and effect of the alleged contract. This is harmful error and is grounds for a new trial.

All of such evidence should have been considered by the trial judge. G.L. Chapter 106, Section 2-302 (2). *Application of State of New York* v. *I.T.M., Inc.* supra and see *E. F. Lynch, Inc.* v. *Piccirilli*, 28 Mass. App. Dec. 49 (1964) and *Central Budget Corp.* v. *Sanchez,* supra.

The good faith of the defendants is obvious for they paid the monthly payments up until the time that they were unable to procure any more food at the price that had been agreed upon.

The contract for the food appears to be an integral part of the whole agreement. The first approach to the defendants was a postcard which they received informing them that they had "won a free Miami Beach vacation for two." They were subsequently visited by a Mr. Bloom, a salesman for Northeast Food Services, Inc., and were asked if they would be interested in a frozen food plan and then followed the subsequent signing of the note, bond and guarantee and the sales agreement, all on the same day. It seems to us from the reported evidence that the whole transaction has a commer-

cial setting, so to speak, and therefore all the evidence concerning such a commercial setting should be allowed in and considered at the trial.

Furthermore, the methods by which this contract for the purchase of the freezer was obtained and the fact that the food was a necessary requirement or part of such contract and the manner in which they were induced to sign up for such food service and the freezer seems to us to be very important. This is exactly what the statute means, 2-302 of G.L. Chapter 106, when it says that the defendants "must be given a reasonable opportunity to present evidence on the grounds that the said contract is unconscionable."

All the evidence surrounding the circumstances of the signing of the contract should have been admitted and not confined to the single contract for the purchase of the freezer as the trial judge ruled. All of this evidence is certainly relevant to the basic question here and might be decisive of it. Such evidence was admissible to show that Northeast Food Service, Inc. had engaged in deceptive practices during the negotiation of the instant contract. The reported evidence further indicates that the freezer payments were included in the food payments.

The evidence concerning the Northeast Food Service Membership Bond and Guarantee was introduced to show that Northeast's agent was

not merely selling a freezer unit to the defendants but also that he made certain representations about a frozen food plan, which the defendants relied on. Such evidence was admissible on the issue of unconscionability and again to show the commercial background of the contract. G.L. Chapter 106 supra.

As the defendant points out in his brief, the parol evidence rule does not exclude extrinsic evidence of fraud in the inducement of a contract. *Butler* v. *Prussian,* 252 Mass. 265, *Broomfield* v. *Kosow,* 349 Mass. 749, therefore, such evidence as the Membership Bond and Guarantee is admissible here on the issue of fraud or deceptive practices.

To rule that all of this evidence was irrelevant and inadmissible was prejudicial error.

The case is to be remanded to the District Court for a new trial.

In view of this conclusion, we do not review the requests for rulings at this time.

STEVEN K. RIEMER
   for the Plaintiff.
EDMUND M. HURLEY
   for the Defendants.