**GEMINI INVESTORS, INC., Gemini Investors IV, L.P., Plaintiffs,**

**v.**

**CHES–MONT DISPOSAL, LLC, WBLF Acquisition Company, LLC, Defendants.**

**Civil Action No. 06–11894–RBC.**

United States District Court, D. Massachusetts.

June 29, 2009.

Peter Alley, Zachary C. Kleinsasser, Victor H. Polk, Jr., Greenberg Traurig LLP, Boston, MA, for Plaintiffs.

Edmund A. Allcock Marcus, Jennifer L. Barnett, Douglas A. Troyer, Marcus, Errico, Emmer & Brooks, P.C., Braintree, MA, Peter A. Biagetti, Wynter N. Lavier, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, Aaron Krauss, Jeffrey I. Pasek, Cozen O'Connor, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER ON MOTION IN LIMINE: REFERENCE TO ALLEGED FIDUCIARY RELATIONSHIP (# 100)

COLLINGS, United States Magistrate Judge.

### I. Introduction

In its Third Counterclaim against Gemini Investors, Inc. ("Gemini"), Ches–Mont Disposal, LLC ("Ches–Mont") alleges a claim for breach of fiduciary duty. (# 94 ¶ ¶ 103–106) Gemini takes the position that this counterclaim lacks merit and so has moved *in limine* to exclude any reference to any purported fiduciary relationship. (# 100) In response, Ches–Mont filed a memorandum of law together with exhibits. (# 112) A reply memorandum was submitted (# 121) and oral argument on the motion was heard on May 13, 2009.

After hearing the parties, the Court decided to treat the motion *in limine* as a motion for summary judgment on the third counterclaim and ordered the defendant to file materials complying with Fed.R.Civ.P. 56(e) in opposition to the summary judgment motion on or before the close of business on May 27, 2009. (*See* Electronic Clerk's Notes dated 05/13/2009) Ches–Mont duly filed its opposition with exhibits (# 126) and its statement of undisputed facts (# 127). With leave, Gemini filed a reply. (# 135) The Court allowed Ches–Mont to submit a sur-reply (# 140), to which Gemini was permitted to file a further reply (# 141). With the record complete, the motion *in limine* a/k/a motion for partial summary judgment stands ready to be resolved.

### II. The Summary Judgment Standard

The purpose of summary judgment " 'is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' " *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1 Cir., 2005) (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1 Cir., 1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)); *see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1 Cir., 1990). The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 19 (1 Cir., 2003); *De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 115–16 (1 Cir., 2004). " 'Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show, through materials of evidentiary quality, that such a dispute exists.' " *Cordero–Soto v. Island Finance, Inc.*, 418 F.3d 114, 119 (1 Cir., 2005) (quoting *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 66 (1 Cir., 2004)); *see also Mulvihill*, 335 F.3d at 19 (citing *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1 Cir., 2000)).

When considering whether to grant summary judgment, the Court must determine whether " . . . the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court looks to "the record on summary

judgment in the light most favorable to the nonmovant." *Hoffman v. Applicators Sales and Service, Inc.*, 439 F.3d 9, 11 (1 Cir., 2006) (citing *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 50 (1 Cir., 2000)). All reasonable inferences will be drawn in the favor of the nonmoving party. *Poulis–Minott v. Smith*, 388 F.3d 354, 361 (1 Cir., 2004); *see also Alliance of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30, 34 (1 Cir., 2005), *cert. denied*, 547 U.S. 1143, 126 S.Ct. 2034, 164 L.Ed.2d 806 (2006); *Santoni v. Potter*, 369 F.3d 594, 598 (1 Cir., 2004); *Mulvihill*, 335 F.3d at 19; *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, 332 F.3d 6, 13 (1 Cir., 2003).

Despite this "notoriously liberal" standard, *Mulvihill*, 335 F.3d at 19, summary judgment cannot be construed as "a hollow threat". *Kearney v. Town of Wareham*, 316 F.3d 18, 22 (1 Cir., 2002). A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Poulis–Minott*, 388 F.3d at 362–63 (quoting *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1 Cir., 1993), *cert. denied*, 511 U.S. 1126, 114 S.Ct. 2133, 128 L.Ed.2d 863 (1994)); *Rojas–Ithier*, 394 F.3d at 42; *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1 Cir., 2004). In weighing whether a factual dispute is "material," the Court must examine the substantive law of the case because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *De La Vega*, 377 F.3d at 115; *Rojas–Ithier*, 394 F.3d at 42.

### III. Discussion

Ches–Mont contends that there are genuine issues of material fact on the question of whether a fiduciary relationship existed between itself and Gemini so as to preclude the entry of partial summary judgment. First, the defendant contends that there is sufficient evidence from which a jury could find that Gemini owed Ches–Mont a fiduciary duty based on their partnership. Ches–Mont claims that there are disputed facts as to whether a partnership existed between Gemini and Ches–Mont, whether Gemini generally represented that it intended to partner with Ches–Mont and specifically whether Gemini represented to LaSalle Bank, N.A. that it was Ches–Mont's partner. (# 127 ¶ ¶ 1–3)

Under Massachusetts law:

'A partnership is an association of two or more persons to carry on as co-owners a business for profit. * * * There must be a voluntary contract of association for the purpose of sharing the profits and losses, as such, which may arise from the use of capital, labor or skill in a common enterprise, and an intention on the part of the principals to form a partnership for that purpose.' *Mitchell v. Gruener*, 251 Mass. 113, 123, 146 N.E. 252, 255 [1925]. *Seemann v. Eneix*, 272 Mass. 189, 194, 172 N.E. 243 [1930]. *See Beatty v. Ammidon*, 260 Mass. 566, 576, 157 N.E. 702 [1927]. Subject to any agreement between partners, each shall share equally in the profits, and must contribute toward the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits. *Lavoine v. Casey*, 251 Mass. 124, 127, 146 N.E. 241 [1925]. *See Kavanaugh v. Johnson*, 290 Mass. 587, 596, 195 N.E. 797 [1935].

*Boyer v. Bowles*, 310 Mass. 134, 138, 37 N.E.2d 489, 492 (1941).

Turning to the evidence proffered by the defendant, certainly the Outline of Key Transactions Terms anticipated a partnership if the transaction was ultimately closed. (# 126, Exh. 6) Similarly, the April 18, 2006 letter from Gemini to the principals of Ches–Mont is anticipatory in nature, i.e., "we believe we would make an excellent capital partner for the Company going forward" and "I think you will find that we are good partners to work with (sic)." (# 126, Exh. 56) However, neither the Outline nor this letter evidences that a partnership ever came into being. *See, e.g., Garvey v. Lemle*, 2005 WL 2009552, *10 (Mass.Super., Jul. 29, 2005).[1]

■ The same is true with respect to the June 8, 2006 e-mail and attached cover letter from James Rich to Ches–Mont, i.e., "[a]ll of us here remain enthusiastic about the opportunity to work with you." (# 126, Exh. 57) Once again, the text makes plain that these were *proposed* terms. (# 126, Exh. 57 at 2) By it terms, Exhibit 18 is a *Preliminary* Summary Prepared by Gemini Investors dated July 18, 2006 before the Outline was executed. There was no agreement at this juncture; rather the summary incorporated projections and goals for the transactions and future business expectancies. (# 126, Exh. 18 (emphasis added)) An intent to enter a partnership does not prove that a partnership was ever reached.

■ Similarly, in a July 20th e-mail (# 126, Exh. 20) James Rich of Gemini stated that "we ... remain very enthusiastic about the opportunity ... and continue to be excited to partner with you guys." Ches–Mont also points to two instances in which Mr. Rich used the words "partnering" or "partner" in his deposition testimony. (# 126, Exh. B at 134:21–22, 233:5–6) The defendant attaches to its sur-reply an August 22, 2006 letter from Mr. Rich to the principals of Ches–Mont in which he again uses the phrase "business partners." [2] (# 140, Exh.) However, use of the verb "partner" alone does not suffice to establish a partnership:

> The chief basis for the contention that there was a partnership seems to be that the parties frequently referred to themselves as such. We are not clear as to the precise terms of the alleged partnership. The relationship, whatever it was, took form within the framework of two existing corporations, which continued to be legal entities distinct from their stockholders. That the plaintiff, the defendant, and Clark were the principal stockholders did not make them partners or either corporation a partnership. *Leventhal v. Atlantic Finance Corp.*, 316 Mass. 194, 198, 55 N.E.2d 20, 154 A.L.R. 260 [1944]. It is not enough that the parties referred to each other as partners. *Cardullo v. Landau*, 329 Mass. 5, 9, 105 N.E.2d 843 [1952].

*Martin v. Stone*, 332 Mass. 540, 546, 126 N.E.2d 196, 200 (1955).

And so it is here. It is undisputed that the final proposed transaction in this case was never consummated, and there are no facts

---

1. Judge Van Gestel wrote "[i]n order for there to be a partnership, there must be an *agreement of the parties* manifesting their intention to be such, a sharing of profits and losses, and participation of the parties in the control or management of the enterprise. *Garvey*, 2005 WL 2009552, at *10 (emphasis in original; citations omitted). The April 18th letter, which predates the Outline, was written at a time when there was not yet any agreement between the parties. The text of the letter makes this clear, to wit, *"[a]ssuming* we can make progress on a framework of working together ...". (# 126, Exh. 56 (emphasis added))

2. The Court agrees with the position taken by the plaintiff in its further reply memorandum (# 139) that, read in the context of the letter, the "business partners" to whom Mr. Rich was referring were "the other three members" of Mr. Koon's team, not Gemini.

to show, or from which it can be inferred, that a partnership between Gemini and Ches–Mont was ever created or established.

■■■ Next defendant argues that based on Ches–Mont's induced reliance on Gemini's superior knowledge and experience, Gemini owed Ches–Mont a fiduciary duty. Under Massachusetts law,

The question of whether, in a particular factual setting, a fiduciary relationship exists is a question of fact. *See, e.g., Broomfield v. Kosow,* 349 Mass. 749, 212 N.E.2d 556, 560 (1965). Our review of factual assessments made by Massachusetts courts suggests that a fiduciary relationship will frequently be found where certain indicia are present. First, a party owed a fiduciary duty is often in a position of great disparity or inequality relative to the other party. *See, e.g., Kosow,* 212 N.E.2d at 560. Second, a fiduciary duty (and breach thereof) will be found to exist where the disparity in relationship has been abused to the benefit of the more powerful party, particularly where unjust enrichment would result. *See, e.g., id.; Warsofsky v. Sherman,* 326 Mass. 290, 93 N.E.2d 612, 615 (1950).

Further, in the commercial context, other indicia of fiduciary relationships are generally present. Massachusetts courts have stated that, though business transactions conducted at arm's length generally do not give rise to fiduciary relationships, such a relationship can develop where one party reposes its confidence in another. *See, e.g., Warsofsky,* 93 N.E.2d at 615. Importantly, however, courts have repeatedly cautioned that " 'the plaintiff alone, by reposing trust and confidence in the defendant, cannot thereby transform a business relationship into one which is fiduciary in nature.' " *Superior Glass Co. v. First Bristol County Nat'l Bank,* 380 Mass.

829, 406 N.E.2d 672, 674 (1980) (quoting *Kosow,* 212 N.E.2d at 560). In determining whether such a transformation has taken place, courts look to the defendant's knowledge of the plaintiff's reliance and consider the relation of the parties, the plaintiff's business capacity contrasted with that of the defendant, and the "readiness of the plaintiff to follow the defendant's guidance in complicated transactions wherein the defendant has specialized knowledge." *Kosow,* 212 N.E.2d at 560.

*Industrial General Corp. v. Sequoia Pacific Systems Corp.,* 44 F.3d 40, 44 (1 Cir., 1995); *see also Davidson v. General Motors Corp.,* 57 Mass.App.Ct. 637, 642–643, 786 N.E.2d 845, 849–850 (2003).

The defendant contends that "Gemini touted its 'skill sets,' including experience, skill, relationships with prospective lenders, expertise and superior financial knowledge, in its marketing efforts to Ches–Mont." (# 127 ¶ 4) Indeed, for example, James Goodwin, a principal of Gemini, acknowledged at his deposition that one of the bases upon which Gemini was marketed to Ches–Mont was the relationships the plaintiff enjoyed "with a number of senior lenders." (# 126, Exh. A at 87) James Rich also testified at his deposition that in negotiating with Ches–Mont, Gemini's strengths and skill sets were discussed. (# 126, Exh. B at 182) Ches–Mont also points out that Gemini made numerous representations as part of its marketing efforts, for instance, that Gemini had "relevant industry experience" and had "a significant number of strong banking relationships." (# 126, Exh. 56) As a consequence of these marketing efforts, Ches–Mont claims to have been induced to rely upon Gemini's purported superior "skill sets" such that a fiduciary duty arose.

Further, Ches–Mont contends that it was contractually obligated to rely on Gemini's alleged superior "skill sets" as evidenced by the exclusivity and confidentiality provisions in the Outline. (# 126, Exh. 6 at 2) The argument runs that since under the terms of the Outline, Ches–Mont was foreclosed from conducting its own investigation or seeking other sources of finances, it had to rely on Gemini, and Gemini knew it.[3]

Gemini asserts that these facts do not transform an arms-length business transaction into a fiduciary relationship, and its point is well-taken. In a case wherein a corporation sued a prospective underwriter when that underwriter withdrew from a proposed initial public offering, the court discussed the duty owed between the parties:

> Café [the corporation] argues that Schneider [the underwriter] portrayed the relationship between the parties as one based on trust, and enticed Café into trusting it by representing that Schneider was better situated than Diversified to effect Café's IPO. Café also asserts that the IPO process is nothing more than corporate promotion, and that since corporate promoters owe a fiduciary duty to the corporation, *see Anderson v. Johnson,* 45 R.I. 17, 26, 119 A. 642 (1923), so, by extension, do putative underwriters. Both arguments fall short of their intended target.
>
> To the extent that Schneider snared Café with its siren song of "trust us," that song consisted of no more than corporate puffery. Café claims to have been lured away from the Diversified proposal in July of 1996 by the repre-

sentation that Schneider had 20 to 30 offices throughout the country with a network of 150 to 180 selling brokers, and had a record of taking firms public. Believing that those factors made Schneider a more attractive underwriter, Café selected it. A sales pitch, however, does not a fiduciary relationship create. Were that the case, each of millions of commercial transactions that take place every day would give rise to duties that far exceed the scope of the relationships that created them. While Schneider certainly expected Café to trust it, so too does every merchant who contracts with another "trust" the other party to perform.

*Café La France, Inc. v. Schneider Securities, Inc.,* 281 F.Supp.2d 361, 372–373 (D.R.I., 2003).

In this case, Gemini's sales pitch with respect to its superior "skill sets" is no more than comparable corporate puffery. While Gemini may have enjoyed a certain financial expertise, as in the *Café La France* case, Ches–Mont was no business neophyte. (*See* # 126, Exh. 1 "Chesmont's highly experienced management team has the know-how to run and manage a highly efficient company, knows the regulatory processes, knows the regulatory authorities personally, knows the other players in the regional and national markets, and knows how to buy and integrate other companies.") This is not a case where the parties were in positions "of great disparity or inequality," nor have there been any facts proffered to support a finding that Gemini somehow took advantage of Ches–Mont's supposed "vulnerability." *See Davidson,* 57 Mass.App.Ct. at 643, 786

---

**3.** According to Mr. Rich's deposition testimony, Gemini knew that Ches–Mont "needed capital . . . to close the landfill and they wanted capital to refinance out certain lenders." (# 126, Exh. B at 102). At some point in the process Gemini learned that Ches–Mont was in a workout situation with Sovereign Bank, a circumstance which Mr. Rich considered to be "a fact." (# 126, Exh. B at 102–103) Ches–Mont characterizes its circumstances as "a predicament" of which Gemini had knowledge. (# 126 at 11)

N.E.2d at 850; *compare Warsofsky v. Sherman*, 326 Mass. 290, 93 N.E.2d 612 (1950).

■ Under Massachusetts law,

Although a catalyst in the transformation of a business relationship into a fiduciary relationship may be the defendant's knowledge of the plaintiff's reliance on him, *Broomfield v. Kosow*, 349 Mass. at 755, 212 N.E.2d 556, that transforming reaction is inhibited (to continue the chemical analogy) when, as here, the parties expressly agreed that the plaintiffs would have the obligation to check things for themselves. In terms of the analysis in *Patsos* [*v. First Albany Corp.*, 433 Mass. 323, 741 N.E.2d 841 (2001)], the relationship here was like that between a customer and a broker in a nondiscretionary account: the plaintiffs here were told by [defendant] to investigate the investment for themselves and not to rely on [defendant].

*Davidson*, 57 Mass.App.Ct. at 643, 786 N.E.2d at 850.

The Outline of Key Transaction Terms in this case, particularly the paragraph relating to due diligence, reflects that Gemini was looking out for itself in this transaction. Specifically, that paragraph states:

This *Outline* does not constitute a commitment by Gemini to complete the financing or ensure that the senior capital will be raised on acceptable terms to all parties. The Closing of the transaction is subject to the completion of legal documentation, due diligence satisfactory to Gemini and senior debt financing in amount and on terms acceptable to Gemini.

Opposition # 126, Exh. 6.

Based on this language, Ches–Mont clearly should have known that Gemini was acting in its own best interest, not somehow to protect the interest of Ches–Mont.

To summarize, the defendant has failed to raise any genuine issue of material fact as to whether a fiduciary duty existed between Gemini and Ches–Mont.

### IV. Order

For all the reasons stated, it is ORDERED that the Motion *In Limine:* Reference To Alleged Fiduciary Relationship (# 100), treated as a motion for summary judgment on the third counterclaim be, and the same hereby is, ALLOWED. Summary judgement shall enter for the plaintiffs on the third counterclaim.